No. 14445

IN THE SUPREME COURT OF THE STATE OF MONTANA

IN THE MATTER OF THE RECOUNT OF THE JUNE 6, 1978,
RAVALLI COUNTY PRIMARY ELECTION,

BOB THOFT,
          Petitioner.

No. 14455

IN THE MATTER OF THE RECOUNT OF THE JUNE 6, 1978,
RAVALLI COUNTY PRIMARY ELECTION,

FRITZ TOSSBERG,
          Petitioner.

ORIGINAL PROCEEDINGS:

Counsel of Record:

    For Petitioners:

        Harrison, Loendorf & Poston, Helena, Montana
        James T. Harrison, Jr. argued (Thoft) Helena, Montana
        William Leaphart, Jr. argued, (Tossberg) Helena, Montana
        James Robinson argued, Hamilton, Montana

    For Respondents:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Mike McGrath argued, Assistant Attorney General, Helena, Montana
        Phyllis Baden argued, Hamilton, Montana

Submitted: August 23, 1978

Decided: SEP 6 - 1978

Filed: SEP 6 - 1978

*Thomas J. Kearney*
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

On August 10, 1978, the Fourth Judicial District Court, Ravalli County, ordered a new primary election be held September 12, 1978, for candidates of all political parties in Senatorial District No. 46 and Representative District Nos. 91 and 92. Bob Thoft, Republican candidate for Representative in District No. 92, subsequently petitioned this Court to issue a Writ of Mandamus or other appropriate writ ordering the Republican primary election of June 6, 1978 for Representative District No. 92, be certified as final and valid. Fritz Tossberg, Democratic candidate for Senate in District No. 46, petitioned this Court to issue a similar writ ordering that no new primary election shall be held in Senate District No. 46 or Representative District Nos. 91 and 92 and that all nominations for the legislature be declared vacant--to be filled by appointment through party caucuses.

This opinion follows the separate orders handed down by this Court August 28, 1978, denying the petitions.

In the primary election of June 6, 1978, voters in Ravalli County, Montana, were each provided with four paper ballots: the Democratic party primary ballot, the Republican party primary ballot, the nonpartisan judicial ballot and the soil conservation district ballot. The ballots were uniform in size and color. Each voter, after signing the pollbook, was handed the four ballots with instructions to vote either the democratic or republican party primary ballot and both of the other ballots. The unused party primary ballot was to be discarded in a blank ballot box.

The results of the June 6 primary were certified to the Secretary of State with respect to Senate District No. 46 and Representative District Nos. 91 and 92, as follows:

-2-

"N" means nominated

Democratic                          Republican

SENATE DISTRICT NO. 46

|  | | |  |
|---|---|---|---|
| Russell J. Bergren<br>Ravalli | 1,596 | N - Elmer D. Severson<br>Ravalli | 1,937 |
| N - Fritz Tossberg<br>Ravalli | 1,597 | | |

HOUSE DISTRICT NO. 91

|  | | |  |
|---|---|---|---|
| Robert G. Edmonds<br>Ravalli | 392 | Mrs. Roy Cranmore<br>Ravalli | 438 |
| N - Ken Robbins<br>Ravalli | 1,133 | N - John W. Robinson<br>Ravalli | 452 |

HOUSE DISTRICT NO. 92

|  | | |  |
|---|---|---|---|
| N - Dennis H. Day<br>Ravalli | 775 | Philip L. Baden<br>Ravalli | 679 |
| Steven E. McCarter<br>Ravalli | 596 | N - Bob Thoft<br>Ravalli | 694 |

Candidate Russell J. Bergren made a timely request for a recount, and on June 27, 1978, the Ravalli County Recount Board convened to recount the ballots cast in Senate District No. 46. Counting the votes according to precinct, the Board determined in 11 of the 20 precincts the number of ballots cast were in excess of the signatures appearing in the precinct pollbooks. A total of 47 excess ballots were counted over the number of signatures in the pollbooks. Thirty-four of these extra ballots were cast in Representative District No. 91 and 13 extra ballots were cast in Representative District No. 92.

While counting the ballots cast in the 8th precinct, the Recount Board also discovered some of the ballots did not have the official ballot stamp endorsed on the back. For purposes of authenticity, each ballot is required by statute (Section 23-3603(2), R.C.M. 1947) to have the "official ballot" stamp on the back. The Recount Board members discussed the matter and decided thenceforward to note on the record the

ballots for each candidate without the official ballot stamp, as they were found. Beginning with the 8th precinct, such notations were made in the Recount Board's minutes. The minutes reveal that in 10 of the remaining 13 precincts 48 of the ballots were not validated with the official ballot stamp. No determination was made concerning the number, if any, of unstamped ballots cast and counted in the first 7 precincts. Upon completion of the recount, it was determined Bergren had won, 1,601 to 1,598.

Philip Baden, candidate for Representative, District No. 92, filed an application for recount on June 23, 1978. Mrs. Roy Cranmore, candidate for Representative, District No. 91, filed an application for recount on June 28, 1978.

On June 29, 1978, the Ravalli County Attorney petitioned the District Court for a declaratory judgment on the rights, duties and obligations of the Ravalli County Recount Board, the Secretary of State, the Ravalli County Clerk and Recorder, and all the candidates involved in the matter. The District Court gave notice to all candidates named on the ballots and ordered all interested parties to appear and present evidence. On August 10, 1978, the Court entered its findings of fact, conclusions of law and order.

In part, the District Court found there was no evidence of fraud or intentional wrongdoing on the part of any election official or elector, but rather the excessive number of ballots resulted from electors voting on both the republican and democratic party primary ballots. This error was not detected by election officials because of the identical size and color of all four ballots. The District Court also concluded that certain ballots failed to contain the official ballot stamp due to technical irregularities and they should be counted in order to express the will of the majority of the legal voters.

-4-

The District Court found the will of the majority of the legal voters of the political parties would be best served by a new primary election for both Republican and Democratic candidates in Senate District No. 46 and Representative District Nos. 91 and 92. A new primary election was ordered to be held on Tuesday, September 12, 1978.

On August 17, 1978, Bob Thoft, candidate for Representative, District No. 92, petitioned this Court to issue a writ of mandamus or other appropriate writ ordering that no new primary election be held for the Republican primary in District No. 92. Thoft contends a new election is unnecessary in his case because only 13 extra ballots were cast in District No. 92 and he won by a 15-vote margin, thereby making it mathematically certain that he won the nomination without the benefit of the extra votes.

On August 23, 1978, Fritz Tossberg, candidate for the Senate, District No. 46, petitioned this Court for a writ of mandamus or other appropriate writ ordering that no new election be held in any of the races and directing all nominations be declared vacant, to be filled by appointment through party caucuses. Tossberg contends the District Court should have directed the respective parties to select new candidates according to party custom because the statutory violations occurred during a primary, rather than general, election.

Considering Thoft's petition, we look first to the controlling statute. Section 23-4002, R.C.M. 1947, provides in part:

> "(3) They [the election judges] shall count the ballots to ensure that the number of ballots corresponds with the number of names on the pollbooks.
>
> "(4) A ballot which is not endorsed by the official stamp is void and shall not be counted. A ballot or part of a ballot is void and shall not be counted if the elector's

-5-

choice cannot be determined. If part of
a ballot is sufficiently plain to determine
the elector's intention, the election
judges shall count that part.

"(5) . . .

"(6) If the ballots exceed the number of
names on the pollbooks they shall be placed
in the box, and one (1) of the election
judges shall publicly draw from the box and
destroy unopened ballots equal to the excess.
The election judges shall record in the poll-
books the number of ballots destroyed."

Despite the fact the election judges in Ravalli County did not proceed according to the statute, Thoft argues the outcome of the election would have been the same had they followed the statutory procedure.

" . . . It is a rule of well-nigh uniform
recognition that, after an election has been
held, a party will not be permitted to challenge
it unless he can show that a different result
would have been reached but for the conditions
of which he complains." Martin v. State Highway
Commission et al (1939), 107 Mont. 603, 615, 88
P.2d 41.

We agree with petitioner Thoft that discarding the 13 extra ballots cast in Representative District No. 92 will not change the outcome of the election in his race. However, since the unstamped ballots were also counted, his mathematical certainty may depend on such void ballots. Section 23-4002, R.C.M. 1947, is unambiguous on this point. A ballot which is not endorsed with the official stamp is void and shall not be counted. Thoft's total vote may include some of the 48 unstamped ballots found in precincts 8 through 20 and may also include unstamped ballots in precincts 1 through 7. Consequently in view of the unstamped ballots, it cannot be said with mathematical certainty that Bob Thoft received his party's nomination for Representative in District No. 92. There is no way of telling at this point which candidates should have had ballots thrown out by virtue of the lack of a stamp. We find

-6-

therefore, that a new primary election should be held in Representative District No. 92, according to the District Court's order.

Petitioner Tossberg does not question the District Court's conclusion that the primary election of June 6, 1978, in Senate District No. 46 was fatally flawed by irregular voting practices. Tossberg contends Montana's election laws require the District Court, under these circumstances, to declare the nominations vacant and direct the parties to fill the vacancies by appointment. We do not agree.

Section 23-4763, R.C.M. 1947, provides:

"Grounds for contest of nomination or office. An elector of the state or of any political or municipal division thereof may contest the right of any person to any nomination or office for which the elector has the right to vote, for any of the following causes:

"(1) on the ground of a deliberate, serious, and material violation of any provision of the law relating to nominations or elections;

"(2) whenever the person whose right is contested was not, at the time of the election, eligible to such office;

"(3) on account of illegal votes or an erroneous or fraudulent count or canvass of votes."

A petition to contest the Democratic party nomination in Senate District No. 46 was filed by Tossberg in District Court on June 30, 1978. Assuming section 23-4763(3) applies in this case, Tossberg relies on section 23-4767, R.C.M. 1947, for his conclusion that the District Court was required to turn the nominations over to the political parties. However, section 23-4767, provides in part:

" . . . If judgment of ouster against a defendant [person erroneously nominated or elected] is rendered, the nomination or office shall be by the judgment declared vacant, except as provided in 23-4762, and

shall thereupon be filled <u>by a new election</u>
<u>or by appointment as may be provided by law</u>
regarding vacancies in such nomination or
office." (Emphasis added.)

Without a doubt, an alternative available to the District

Court is to order a new election.

Section 23-47-107, R.C.M. 1947, is not more specific,

as Tossberg argues:

"Voiding election. (1) If a court of competent
jurisdiction finds that the violation of any
provision of Title 23 or Title 37, by any
candidate or political committee probably
affected the outcome of any election, the
result of that election may be held void
and a special election held within 60 days
of that finding. If the violation occurred
during a primary election, the court may direct
the appropriate political party to select a
new candidate according to the provisions of
state law and the custom of the party. Except
as provided in subsection (2), an action to void
an election shall be commenced within 1 year of
the date of the election in question."

Obviously, the quoted statute is limited to violations

by any candidate or political committee, whereas the facts

before us involve violations by election officials. In any

case, the statute <u>permits</u> the court to direct the appropriate

political party to select a new candidate if the violation

occurs during a primary election. It is not <u>required</u> to do

so.

The petitions are denied and a new primary election

will be held in Ravalli County on September 12, 1978, in

accordance with the order of the District Court, which we

affirm.

John C. Sheehy
                                        Justice

-8-

We Concur:

_Frank I. Haswell_
Chief Justice

_Gene B. Daly_

_____

_____

Mr. Justice John Conway Harrison and Mr. Justice Daniel
J. Shea did not participate in this cause.